IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VALERIE BROWN,

      Plaintiff,                        No. CIV S-07-1038 EFB

    vs.

MICHAEL J. ASTRUE,              <u>ORDER</u>
Commissioner of Social Security,

      Defendant.
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income and Disability Insurance Benefits under Title XVI and Title II, respectively, of the Social Security Act ("Act"). For the reasons that follow, plaintiff's motion for summary judgment is denied, and the Commissioner's cross-motion for summary judgment is granted. The Clerk is directed to enter judgment for the Commissioner.

**I. BACKGROUND**

      Plaintiff, born August 23, 1955, initially applied for disability benefits and supplemental security income on September 19, 2001, alleging disability since January 27, 2001, due to

////

////

1

depression, broken collar bone, and broken back.[1]  Administrative Record ("AR") 67-69, 72, 312.  The applications were denied initially and upon reconsideration.  AR 39-42, 313-18.

A hearing was held before administrative law judge ("ALJ") Barry M. Wesker on July 15, 2003.  The hearing was continued to November 20, 2003, so that the results of a psychological examination could be entered in the record and considered at the hearing.  AR 322-79.  On May 15, 2004, the ALJ found plaintiff not disabled.[2]  AR 11-26.  The ALJ made the

---

[1] Plaintiff received disability benefits from March 1989 through December 1996, due to her "significant history of polysubstance abuse."  AR 14.  Her benefits were terminated on January 1, 1997, pursuant to amendments to the Act with respect to disabilities based on substance abuse.  *Id.*  She did not seek review of the termination, but filed a new application for benefits on January 22, 1997.  That application was denied initially and upon reconsideration, and when plaintiff failed to appear at the subsequent hearing, her request for hearing was dismissed.  *Id.*  Plaintiff filed another application on August 19, 2000, which was also denied.  She did not request further review of those prior denials.  AR 14-15.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401, *et seq.*  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382, *et seq.*  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) and 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  *See* 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 and 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through June 30, 2001.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's dysthymia, anxiety disorder, borderline intellectual functioning, polysubstance abuse in remission, hepatitis C, status post right clavicle fracture and lumbar strain with mild compression deformities of the lumbar spine are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 4156.920(b).

4. Based on the testimony of the Medical expert, the severity of the claimant's polysubstance abuse and mental condition meets section 12.09 of the listing of impairments in conjunction with section 12.08 of the Listing of Impairments.

5. Absent the claimant's polysubstance abuse or while her polysubstance abuse is in remission, the above medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

6. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

7. With polysubstance abuse, the claimant is unable to sustain regular and continuous work.

8. Absent polysubstance abuse, the claimant retains the residual functional capacity for no more than a full range of light exertional work at a less than average pace, further reduced by mental limitations precluding the claimant's ability to perform more than simple, one to two step tasks, and manipulative limitations that reduce her overall use of her right dominant arm by 25 percent and otherwise precludes all overhead activity with her right dominant arm.

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3

|     |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                          |
| --- | --- |
| 9.  | The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965). |
| 10. | The claimant is a "younger individual between the ages of 45 and 49" (20 CFR §§ 404.1563 and 416.963). |
| 11. | The claimant has a "high school equivalent education" (20 CFR §§ 404.1564 and 416.964). |
| 12. | The claimant has no appreciable transferable skills from skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968). |
| 13. | Based on the testimony of the vocational expert, and considering the claimant's age, education, work experience and residual functional capacity as described above absent polysubstance abuse, she is able to make a successful adjustment to work that exists in significant numbers in the national and California economies; a finding of "not disabled" is therefore reached under the framework of Rule 202.21 of the Medical-Vocational Guidelines. Examples of such jobs include 1,200 flagger positions in the California economy, 1,500 retail business marker positions in the California economy and 5,000 skating rink or amusement park ticket seller positions in the California economy. |
| 14. | The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)). |
| 15. | The claimant's polysubstance abuse is a contributing factor material in the determination of disability. |

AR 25-26.

On April 3, 2007, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 5-7.

**II. ISSUES PRESENTED**

In her motion for summary judgment, plaintiff alleges three errors in the Commissioner's decision. First, plaintiff alleges that the ALJ failed to give controlling weight to the opinion of examining physician, Dr. Joanna T. Koulianos, Ph.D. Second, plaintiff asserts that the ALJ failed to articulate clear and convincing reasons for discrediting her testimony. Finally, plaintiff alleges that the hypothetical posed to the vocational expert, and relied on by the ALJ, did not

4

properly reflect all of her limitations.

**III. LEGAL STANDARDS**

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**IV. ANALYSIS**

A. <u>Medical Opinions</u>

Plaintiff asserts that the ALJ erred by failing to credit the opinion of examining psychologist, Dr. Koulianos, "above all others." Plaintiff's Motion and Memo. of Points and Authorities in Support of Motion for Summary Judgment ("Pltf's Brief"), 23:17-18.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know

1 and observe the patient as an individual. *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. By contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. *Id*., at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews*, 53 F.3d at 1041 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, the ALJ considered all medical opinions in the record, including those of plaintiff's treating physician, Dr. Nighat Zaka, M.D., examining psychiatrist, Dr. Michael Joyce, M.D., the testifying, non-examining medical expert, Dr. Sidney Walter, and examining psychologist Dr. Koulianos. AR 17-20.

Dr. Koulianos examined plaintiff on June 10, 2003. AR 290-95. She diagnosed plaintiff with "dysthymia versus major depressive disorder, recurrent, moderate," and opioid and alcohol dependence in "sustained partial remission." AR 294. She also diagnosed a history of methamphetamine use and "anxiety disorder, not otherwise specified, with history of panic episodes." AR 294. Dr. Koulianos was guarded in her assessment of plaintiff's limitations, qualifying her impressions as follows:

> Th[is] examination should, however, be considered in conjunction with any other documentation which may become available, particularly as this represents a brief one-time examination and with administration of limited and authorized psychological procedures. With these limitations having been noted, and strictly from a cognitive and emotional standpoint, the following impressions are offered:

6

AR 295.

She went on to make several vague and qualified findings. She found that plaintiff was "presently able to manage her finances independently," but commented that "[h]er ability to do so responsibly, however, is uncertain." AR 295. She wrote that, although plaintiff "could execute simple and uncomplicated routine one or two-step job instructions without significant difficulty," her "ability to do so routinely and effectively 8 hours a day, 4-5 days a week over the long-term is. . . uncertain and at this point seems unlikely." *Id.* She further found that although plaintiff could "interact appropriately with peers, supervisors, or coworkers in a satisfactory manner," she could "likely" do so only "on a limited basis." *Id.* She also vaguely concluded that "limitations exist" with respect to plaintiff's "ability to execute basic daily activity routines." *Id.*

This last finding contrasts with the notes from her interview with plaintiff, who indicated that she could cook, sweep, wash clothes, care for personal grooming and hygiene, grocery shop, go for walks, manage personal finances, access public transportation, and interact with family and friends. AR 292.

The equivocal nature of these findings makes it difficult to discern what exactly Dr. Koulianos believed plaintiff's abilities and limitations were. For example, it is unclear what she meant by plaintiff's ability to interact socially with others "on a limited basis," or what "limitations" she was referring to with respect to plaintiff's daily activities. Further, her "uncertainty" about plaintiff's limitations does little to establish disability. Such ambivalent opinions are not particularly helpful to plaintiff's arguments here in light of the Act's rigorous standards, which require plaintiff to show an inability to perform substantial gainful activity for a period of twelve months or longer. Dr. Koulianos' heavily qualified findings do not clearly establish such inability.

Plaintiff argues that the ALJ should have given controlling weight to Dr. Koulianos' opinion that she was "regarded as currently likely unable" to "manage transitions or the minor

7

stressors associated with employment." AR 295. This finding, however, is also somewhat equivocal, and was contradicted by the opinions of Dr. Joyce, Dr. Walter, and Dr. Zaka.

Dr. Joyce performed a comprehensive psychiatric examination of plaintiff on December 11, 2001. AR 151-56. He diagnosed plaintiff with "adjustment disorder with dysthymic features and possible components of withdrawal." AR 155. He further diagnosed heroin addiction, in remission, with a history of cocaine abuse and alcohol dependence, both in remission. *Id.* He assigned plaintiff a GAF of 60, and concluded that she was able to manage her own funds and follow simple instructions.[3] He opined that she was capable of "maintaining attendance and performing within a schedule with punctuality and tolerance." AR 155. He further opined that "with sobriety," plaintiff was capable of completing a workday and workweek without interruption from her mental impairments. *Id.* He concluded that with medication compliance and sobriety, plaintiff was capable of responding appropriately to supervision, coworkers, or the usual work situation including changes in a routine work setting. AR 156.

The ALJ gave "substantial weight" to this opinion, which was consistent with treating physician Dr. Zaka's comments from September 8, 2003 – just three months after Dr. Koulianos' examination. AR 17. Specifically, Dr. Zaka's notes from that date reveal that plaintiff reported she "was doing well" and did not feel anxious or depressed. AR 299. She reported that she was sleeping well, and exhibited no anxiety or agitation. He further reported that plaintiff's mood was euthymic, and assessed her a GAF of "greater than 70."[4] *Id.*

---

[3] Global Assessment of Functioning ("GAF") is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed., Text Revision, 2000) ("DSM IV-TR"). A GAF of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers). *Id.*

[4] A GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM IV-TR, 34. A GAF of 71-80 indicates "no more

1    Although plaintiff's counsel argues that plaintiff may have failed to reveal her true
2 symptoms to Dr. Zaka because his treatment was part of her parole program, the doctor's prior
3 treatment notes show that plaintiff related her symptoms to him with candor. AR 137-143.
4 These records show she shared with him her personal feelings, thoughts about her personal life,
5 and fluctuations in mood. *Id*. Further, while these records indicate fluctuations in symptoms,
6 they also indicate improvements in both depression and anxiety with adjustments to plaintiff's
7 medication and in response to her group living situation. *Id.*

8    The opinion of non-examining medical expert, Dr. Walter, is consistent with those of
9 Drs. Zaka and Joyce. Based on his review of the medical evidence, Dr. Walter disagreed with
10 Dr. Koulianos' opinion that plaintiff could not handle stress, and opined that plaintiff was
11 capable of, at most, one to three-step occupations "providing it's not fast-paced." AR 356-58.
12 The ALJ credited Dr. Walter's testimony, and found it more compelling than Dr. Koulianos'
13 opinion regarding plaintiff's purported inability to deal with stress. AR 20-21. Because Dr.
14 Walter's opinion was consistent with those of examining and treating physicians, Drs. Joyce and
15 Zaka, respectively, the ALJ did not err in relying on it. He found those opinions to be more in
16 line with evidence of plaintiff's daily activities. AR 20. This was a legitimate reason for
17 crediting medical opinions other than Dr. Koulianos' heavily qualified and outlying opinion.

18    The ALJ's ultimate assessment of plaintiff's residual functional capacity ("RFC") limited
19 her to light exertional work involving simple, one to two-step tasks at a less than average pace.
20 AR 25. This assessment is supported by substantial evidence in the record, namely, the opinions
21 of Drs. Zaka, Joyce and Walter, as well as portions of Dr. Koulianos' opinion. The ALJ was
22 under no obligation to credit Dr. Koulianos' opinion above those of other treating and examining
23 physicians, or the non-examining expert whose opinion was fully consistent therewith.
24 ////

---

26 than slight impairment in social, occupational, or school functioning." *Id*.

9

B. Credibility

Next, plaintiff asserts that the ALJ failed to provide clear and convincing reasons for finding her less than fully credible.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *Id.* at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. *See, e.g., Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ found plaintiff's subjective complaints not entirely credible and inconsistent with her daily activities, use of prescribed medications, and the weight of other evidence in the record. AR 22. He noted that although plaintiff testified that she had significant limitations in the use of her right arm, the medical records showed that she had normal range of motion, sensation, reflexes, and strength in her upper extremities. AR 22, 329-30. Indeed, an orthopedic evaluation performed by Dr. Steve McIntire, M.D., in December 2001, revealed that plaintiff had a full range of motion in both shoulders. Dr. McIntire also noted that she exhibited no discomfort during range of motion testing or during forceful flexion and extension of the

10

1  upper extremities. AR 148. The ALJ also noted that plaintiff took nothing stronger than Motrin
2  for alleged pain related to her shoulder. AR 23.

3  Although plaintiff did not specifically testify regarding her daily activities during either
4  hearing, she reported to several examining physicians that she cooked, shopped, swept floors,
5  washed clothes, and socialized with others without any difficulty. AR 22-23, 146, 152, 292.
6  The ALJ found these activities inconsistent with her complaints of debilitating pain and
7  depression. Finally, the ALJ noted plaintiff's drug addiction and DUI and theft convictions, and
8  commented that they were "not persuasive as to her credibility." AR 23.

9  While drug addiction and DUI convictions have little bearing on a person's credibility,
10 some courts recognize theft as a crime of dishonesty tending to bear on a person's reputation for
11 truthfulness – an appropriate consideration in determining a plaintiff's credibility. *See Albidrez*
12 *v. Astrue*, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007) (ALJ properly discredited claimant based
13 on prior felony convictions including robbery and showing false identification to a peace
14 officer); *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997) (reputation for dishonesty a permissible
15 ground for finding claimant not credible).

16 The Ninth Circuit has ruled that, while "robbery, burglary and theft are ordinarily
17 considered to be dishonest," evidence of convictions for such crimes is not generally admissible
18 under Fed. R. Evid. 609(a)(2).[5] *United States v. Brackeen*, 969 F.2d 827, 830 (9th Cir. 1992).
19 The Court held in *Brackeen* that "the legislative history of this provision shows that Congress
20 intended to limit the term to prior convictions involving some element of deceit, untruthfulness,
21 or falsification which would tend to show that an accused would be likely to testify
22 untruthfully." *Id.* However, the Ninth Circuit later held that it "did not foreclose in *Brackeen*

---

[5] Rule 609(a)(2) provides, that "[f]or the purpose of attacking the character for truthfulness of a witness . . . ,evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness."

11

1  the admission of a prior robbery conviction under the balancing test of Rule 609(a)(1)."[6] *United*
2  *States v. Alexander*, 48 F.3d 1477, 1488 (9th Cir. 1995).
3      These rulings, of course, were made in the context of criminal trials where the Rules of
4  Evidence have direct application. Those Rules do not apply to less formal Social Security
5  administrative proceedings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005) (citing
6  42 U.S.C. § 405(b)(1), 20 C.F.R. §§ 404.950(c), and 416.1450(c)). Nonetheless, they inform the
7  court's analysis here as to the general principles of relevance as the they relate to the basis for
8  the ALJ's credibility determination here.
9      Reliance on plaintiff's drug addiction and DUI convictions, without more, are
10 inappropriate for purposes of assessing her credibility. However, the ALJ also relied on the theft
11 convictions, which are crimes "involving some element of deceit," which plainly are appropriate
12 for consideration in the credibility assessment. Moreover, the convictions were not the only
13 reasons articulated by the ALJ for finding plaintiff less than fully credible. His other reasons –
14 namely, subjective complaints that were contradicted by substantial evidence in the record –
15 were clear and convincing reasons to discredit plaintiff. As such, there was no error with respect
16 to the credibility determination.

    C. <u>Hypothetical Question Posed to Vocational Expert</u>

18     Plaintiff next asserts that the ALJ failed to include all of her limitations in the
19 hypothetical posed to the vocational expert. In particular, she alleges that the limitations opined
20 by Dr. Koulianos should have been included in the hypothetical.
21     Hypothetical questions posed to a vocational expert must set out all the substantial,
22 supported limitations and restrictions of the particular claimant. *Magallanes v. Bowen*, 881 F.2d
23 747, 756 (9th Cir. 1989). If a hypothetical does not reflect all the claimant's limitations, the

---

[6] Rule 609(a)(1) provides that evidence of a conviction under this rule "shall be admitted, subject to Rule 403," and "if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused."

expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991). While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988).

Here, the ALJ posed a hypothetical to the vocational expert in which he limited plaintiff to one and two-step tasks to be performed at a less than average pace. He also precluded overhead reaching with her right arm, and indicated a twenty-five percent reduction from normal use of that arm. AR 369. This was an appropriate hypothetical based on the ALJ's ultimate interpretation of the evidence. It reflected his assessment of the various medical opinions, which as discussed above, was not in error and was supported by substantial evidence.

To the extent plaintiff alleges that the ALJ erred by failing to inquire whether one of the jobs elicited from the vocational expert (i.e., that of "flagger") conflicted with the Dictionary of Occupational Titles ("DOT"), any such error was harmless.

In *Massachi v. Astrue*, 486 F.3d 1149 (9th Cir. 2007), the Ninth Circuit held that the ALJ must determine whether a conflict exists between an expert's testimony and the DOT, and that if it does, he "must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles." *Id*., at 1153. The Court qualified that holding, noting that failure to ask about a conflict is harmless where there is no conflict, or where "the vocational expert . . . provided sufficient support for her conclusion so as to justify any potential conflicts." *Massachi*, 486 F.3d at 1154, n.19.

Here, the vocational expert identified three possible jobs plaintiff could do based on her RFC: flagger, DOT 372.667-022; marker, DOT 209.587-024, and ticket seller, DOT 211.467-030. Plaintiff argues that the job of "flagger" would be impossible for her to perform because it

13

requires using sign, hand, and flag signals. *See* The United States Dept. of Labor, Employment & Training Admin., Dictionary of Occupational Titles (4th ed. 1991) ("DOT"), 372.667-022. She argues that she cannot perform this job because she is incapable of reaching overhead with her right arm and has limited use of that arm. In this regard, she asserts that the vocational expert's testimony conflicts with the DOT.

First, plaintiff alleges no such conflict with respect to the other two jobs identified by the expert, which, by themselves satisfy the Commissioner's burden at step five, and sufficiently support his decision.[7] Further, although the ALJ included the arm limitations in his RFC assessment, he did note that the medical evidence cast doubt as to their severity. *See* AR 145-49 (orthopedic evaluation revealing full range of motion). Finally, the DOT does not state that the job of flagger requires overhead reaching, or otherwise involves giving hand signals for the full eight-hour workday. *See* DOT, 372.667-022. Rather, it describes a range of activities, only one of which is giving signals.

Based on the foregoing, there was no conflict between the expert's testimony and the DOT, and any failure to inquire about such a conflict was harmless. Further, there was no error at step five, as the Commissioner satisfied his burden.

## V. CONCLUSION

In conclusion, the court finds that the ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Therefore, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and,

---

[7] Reported opinions have found numbers ranging from 1350 to 675 to be significant. *See Moncado v. Chater*, 60 F.3d 521, 524 (9th Cir.1995) (2,300 jobs in region and 64,000 nationwide significant) (citing *Barker v. Sec'y of Health and Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. Cal. 1989)(concluding that 1,266 jobs are within the parameters of section 423(d)(2)(A))).

14

1   3. The Clerk is directed to enter judgment in the Commissioner's favor.

2   DATED: September 15, 2008.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE